RECEIVED
NOV 29 2007
Property of U.S. District Court
District of Rhode Island

UNITED STATES DISTRICT COURT
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
)
VS. ) CR06-123ML
)
DANIEL MCLAIN )

---

# MEMORANDUM IN SUPPORT OF SENTENCING

## I. Introduction

Mr. McLain respectfully submits this memorandum to assist the Court in determining a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing. 18 U.S.C. § 3553(a) (2005). Additionally, Mr. McLain submits this memorandum in support of his Motion for Sentencing Consideration advocating for a sentence below the suggested guideline range. The Court is required to sentence a defendant below the advisory guideline range if such a sentence is sufficient to achieve the purposes of sentencing. *Id.* Mr. McLain requests the Court to impose a sentence of 120 months in prison followed by supervised release; a sufficient sentence to adequately addresses society's needs under § 3553(a) in this instance without being longer than necessary.

## II. Factual and Procedural Background

On November 15, 2006, a federal grand jury returned a three-count indictment against Mr. McLain and his co-defendant Eric Grundy. Mr. McLain was arrested by the Providence Police. The next day Mr. McLain appeared before the court and was ordered held without bail. On January 31, 2007 Mr. McLain appeared before the Honorable Mary M. Lisi, Chief U.S. District Judge and pled guilty to the indictment. Sentencing is scheduled for December 6, 2007.

## III. Sentencing Considerations

### A. General

The Court's role in sentencing is delineated in 18 U.S.C. § 3553(a). The statute instructs the

district court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing listed in subsection (a)(2).[1] The district judge must assess, analyze and consider the particular facts of the present offense and the unique characteristics of the defendant before the court. 18 U.S.C. § 3553(a)(1). The judge then must use that individual information to determine an appropriate sentence.

Under the statute, the Court also considers general information including the types of sentences available and the advisory guideline range. 18 U.S.C. § 3553(a)(4) & (5). Congress tasked the Sentencing Commission with developing guidelines for "categories of offenses" and "categories of defendants," (28 U.S.C. § 994© & (d)), in a manner consistent with 18 U.S.C. § 3553(a)(2). 28 U.S.C. § 991(b)(1)(A). The Commission was not instructed, however, to weigh individual characteristics or effectuate the parsimony principle into the guidelines.

The United States Supreme Court decision in *U.S. v. Booker*, 543 U.S. 220 (2005) rendered the Federal Sentencing Guidelines advisory rather than mandatory. *See also Rita v. United States,* No. 5754, 2007 U.S. Lexis 8269 (June 21, 2007). Instead of being bound by the Sentencing Guidelines, *Booker* now "requires a court to consider Guideline ranges, . . . but permits the court to tailor the sentence in light of other statutory concerns as well" *Booker,* 543 U.S. at 245-246.

The district court may now consider even those mitigating factors that the advisory guidelines prohibit or make irrelevant: e.g., poverty, racial discrimination and humiliation, drug abuse and addiction, dysfunctional family background, lack of guidance as a youth, etc. *See United States. Thurston*, 456 F.30 211, 219 (1st Cir. 2006); *United States v. Jimenez-Beltre*, 440 F.3d 514, 527 (1st Cir. 2006) *see also* 18 U.S.C. § 3661 ( "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," cited in *Booker* 125 S.Ct. at 758).

Although no longer mandatory, the Federal Sentencing Guidelines are still a factor that the court must consider in making the ultimate determination of the appropriate sentence to impose in any criminal case. However, the guidelines are *"generalizations* that can point to outcomes that may

---

[1] The statute requires the sentence to reflect the basic aims of sentencing, including just punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2).

appear to be unreasonable to sentencing judges in particular cases[,]" *United States v. Jimenez-Beltre*, 440 F.3d 514 (1st Cir. 2006) (emphasis in original).

In the recent *Rita* decision the United States Supreme Court ruled that while an appellate presumption that the guideline sentence is appropriate is permissible, such a presumption on the District Court level is not. *Rita,* 2007 U.S. Lexis 8269, at **16 and **25. "[T]he presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." *Rita* at **17. (emphasis supplied).

A presumption of reasonableness does not apply on the district court level. *Id. at **25.* The district court judge sentencing a defendant must, therefore, "calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without a thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007) (interpreting *Rita).*

It is important for a District Court judge to assess the 3553 factors separately from the advisory guideline range. In establishing the guidelines, the Sentencing Commission aspired to integrate the factors of § 3553(a) into the guidelines. They were, however, only obligated to incorporate the purposes for sentencing contained in § 3553(a)(2). 28 U.S.C. § 991(b)(1)(A). Further, the guidelines simply could not incorporate the parsimony principle, the unique character of the defendant, or the unique facts of the offense into the calculation of the guideline sentencing range.

When establishing the guidelines, the Commission studied pre-guidelines sentencing practices in an effort to place a sentencing value on certain crimes and mitigating or aggravating factors. *See* U.S.S.G. § 1A1.1 (Part A, 3). Today, however, the resulting guidelines rarely reflect past practices. For example, the guidelines did not account for the blanket increase in time of incarceration due to the abolition of parole. Also, the entire controlled substance guideline framework in U.S.S.G. § 2D1.2 merely parrots the mandatory minimum sentences in the 1986 Anti-Drug Abuse Act (now 21 U.S.C. § 841). Third, the career offender enhancement is entirely a

creation of the Commission and has no past on which to rely.[2] As for the Commission's imprimatur as the expert body on sentencing, its complete repudiation of the crack cocaine guidelines has not resulted in significant change, which brings into question the Commission's actual power and influence. Lastly, the Commission is tasked to continue studying sentencing and adjust the guidelines as necessary. *See* 28 U.S.C. § 994(o); U.S.S.G. § 1A1.1. Those adjustments have resulted in over 700 amendments since 1987, with only a handful resulting in lower guideline ranges. Under these circumstances, holding the advisory guidelines in higher regard than the other § 3553(a) considerations undermines the sentencing process.

The sentencing judge is in the best position to accurately and efficiently determine the appropriate sentence in an individual case. Congress has charged the district court with that duty. 18 U.S.C. § 3553(a). Only the judge can assess the character and background of an individual. Only the judge can enforce the parsimony directive. Only the judge can look the defendant in the eye at sentencing. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). This Court must determine the appropriate sentence, one that is sufficient but not greater than necessary, by incorporating all of the considerations under § 3553(a).

B. Criminal Record and Guideline Criminal History

Mr. McLain does have a significant criminal history complete with several convictions for cocaine possession. Mr. McLain's prior convictions qualify him as a career offender pursuant to the advisory guidelines, but this designation plainly overstates the true seriousness of his criminal record. Absent the career offender designation Mr. McLain would face an advisory range of 140 to 175

[2] Congress directed the Commission to sentence certain career offenders to incarceration at or near the maximum penalty as part of the creation of the guidelines. 28 U.S.C. § 994(h). As a creature of the guidelines, the Commission could not incorporate past practice.

months (OL 29 in Category V)[3], rather than the 262 to 327 range proposed in the PSR. Two of Mr. McLain's predicate convictions involve the hand to hand sales of $20 bags of cocaine. See PSR ¶¶ 31 & 35. His third predicate involves a larger amount of cocaine, but still reflects Mr. McLain to be among street level dealers at the bottom end of the cocaine distribution chain. Nothing about these convictions, alone or in combination with his more minor infractions and the present case, warrants the doubling of his potential sentence from 11 and a half years to almost 22 years in prison.

The Commission created the career offender designation within the guidelines in its effort to comply with Congress's directions. Congress directed the Commission to assure that defendants with at least two prior drug trafficking crimes would receive sentences at or near the maximum penalties when committing a new drug trafficking crime. *See* 28 U.S.C. § 994(h). The result of the Commission's attempt is the flawed over-inclusive career offender sentencing category which fails to properly consider significant factors under § 3553(a). Prior to *Booker*, a sentencing court could not apply any common sense discretion to the application of this designation which resulted in minor drug dealers receiving the same, or worse, treatment as defendants committing very violent crimes. For example, a small time drug dealer, like Mr. McLain, would be subject to the 262 to 327 months range based on the maximum of life in prison for possessing over 50 grams of crack cocaine. A bank robber, however, faces a much lower career offender range of 151 to 188 months regardless of how serious his predicate convictions. This Court now has the power to exercise its discretion when faced with unwarranted severe guidelines enhancements. Here, the career offender designation does not reflect the seriousness of the crime, does not promote respect for the law, and is based on the patently unjustified federal crack cocaine sentencing policies. The suggested guideline range does not comport with § 3553(a) and this Court should impose a lower sentence accordingly.

C. Nature of the Offense

1. Disparity a Real Consideration

The powder/crack sentencing disparity continues to be a completely unjustified portion of the Federal sentencing structure. The United States Sentencing Commission has issued three reports

---

[3] The corresponding calculation for powder cocaine, offense level 17 in category 5, would be 46 to 57 months.

to Congress detailing the lack of justification for the harsh treatment of cocaine base over cocaine powder. Report to Congress: Cocaine and Federal Sentencing Policy (May 2002) ("2002 Report"); Special Report to Congress: Cocaine and Federal Sentencing Policy (April 1997) ("1997 Report"); Special report to Congress: Cocaine and Federal Sentencing Policy (February 1995) ("1995 Report"). All three Commission reports "unanimously and firmly concluded that the various Congressional objectives can be achieved more effectively by decreasing substantially the 100 to 1 drug quantity ratio." 2002 Report at viii. *See also* 1995 Report at xvi; 1997 Report at 2-3.[4] After thorough study of sentencing in crack cocaine prosecutions the Commission determined that the conditions and presumptions on which Congress originally relied for the heightened penalties - that is the presumption of violence, higher addiction rates, greater availability, and more deleterious health effects - did not in fact transpire. *See generally* 2002 Report. The Commission determined early on that it had only considered the quantity of cocaine when establishing the guideline, and failed to look at a number of other important offense and offender characteristics. Those other factors include the geographic range of the defendant's illegal activity, the profit to be reaped by a defendant, the defendant's role as a retail street dealer rather than a wholesale distributor, the lack of violence associated with the offense, the flattening and inversion of penalties versus cocaine suppliers (dealers of large quantities of powder cocaine) and the lack of psycho-pharmacologically induced crime. *See* 1995 Report at 168-175, 193-197. Since the 1995 Report, the Commission has consistently found no difference between the physiological effects of crack versus powder, and also that an *unwarranted* disparity existed because: 1) between 85% and 90% of crack defendant's are African American; 2) street level dealers regularly receive longer sentences than their more culpable suppliers; and 3) the value of the cocaine involved varied disparately compared to the penalty imposed. *Id.* at 173 (emphasis supplied). Despite the Commission's well supported view, Congress has failed to act.[5]

---

[4] Although the Commission has amended the advisory sentencing guidelines with regard to crack cocaine offenses which resulted in the lowering of the 100 to 1 powder to crack penalty disparity, that penalty ratio still exists under the statute, 21 U.S.C. § 841.

[5] The Commission has recently amended the crack cocaine guidelines which lowered 100 to 1 powder to crack penalty ratio and ameliorating the problem by a small measure, but the basis

Since *United States v. Booker*, 543 U.S. 220 (2005), this Court has been free from the sentencing guidelines to exercise its discretion in individual cases. This discretion particularly extends to the consideration of the nature of a controlled substance and the severity of the suggested guideline range in drug trafficking cases. *United States v. Pho*, 433 F.3d 53, 64-65 (1st Cir. 2006). Other circuit courts of appeals have also supported the consideration of the powder versus crack cocaine disparity for sentencing purposes; the D.C. Court of Appeals recently held it was error not to consider the disparity when determining the sentence. *United States v. Pickett*, 475 F.3d 1347, 1355-56 (D.C. Cir. 2007).[6] In the District of Rhode Island, the Court has typically recognized the disparate treatment of crack cocaine and powder cocaine when sentencing in crack cases. *See United States v. Perry*, 389 F. Supp. 2d 278, 304 (D.R.I. 2005) ("when a guidelines sentence involves a nearly impossible-to-justify disparity such as this, the sentence neither reflects the seriousness of the offense, nor promotes general respect for the criminal justice system"). In order to comply with 18 U.S.C. § 3553(a), the Court must consider the unjustified penalty disparity between powder to crack cocaine and how it affects the §3553(a) sentencing factors, like seriousness of the offense and promotion of respect for the law, in this instance.

2. Disparity Unconstitutional

The 100:1 powder to crack sentencing disparity is unconstitutional.[7] Congress proposed, imposed, and has maintained the disparity on bases, including protection of the African American community, which represent both benign and purposeful discrimination.

---

for that reduction was necessarily couched as making the offense levels directly coincide with the mandatory minimum sentence in the statute. *See* U.S.S.G. App. C, Amend 706. For example, the mandatory minimum for possession of over 5 grams of cocaine base, 60 months, now falls in the middle of the corresponding advisory sentencing range; previously the offense level corresponded to a range of at least 63 months in prison.

[6] The issue is presently pending before the Supreme Court in *Kimbrough v. United States*, 05-4554.

[7] *See* fn. 2, *supra*, discussing the 100 to 1 penalty ratio existing in the statute only at this point.

In 1995 the Commission proposed a correction to the 100:1 penalty ratio. The proposal abolished the disparity while creating enhancements for certain aggravating offense characteristics. Congress rejected the proposal, but recognized the gross disparity in the treatment of crack and powder cocaine offenses. Federal Sentencing Guidelines Amendment Disapproval Act, Pub. L. No. 104-38, 109 Stat. 334 (1995) (§ 2(a)(2) directing the Commission to revise the penalty ratio consistent with 18 U.S.C. 3553(a)). The rejection of the proposal centered on a discussion of the effect of crack cocaine trafficking in the African American community. The Commission's report detailed the unwarranted impact of harsh crack sentences on African American defendants. Congress, in debate of the Disapproval Act, upheld the disparity citing the purpose of protecting African Americans from the crack trade.[8]

The Supreme Court has held that the use of race as a basis for government action is subject to strict scrutiny; the government must be pursuing a compelling state interest and the method must be narrowly drawn. *See Shaw v. Hunt*, 517 U.S. 899, 907-08 (1996). In that case the Court struck down a gerry-mandered voting district designed to create an African American majority in an attempt to increase the probability of electing minority, African American, officials. Clearly if the benign discrimination designed to increase minority representation in government cannot pass strict scrutiny, then the rationalization for harsh treatment of crack offenses as protecting African Americans must also fail the test. Criminalizing crack cocaine trafficking is a compelling state interest, but the current penalty disparity remains unfocused to address the harms. The Commission has attempted to more narrowly tailor the disparity between crack and powder cocaine through proposals in its reports to Congress in 1995, 1997, and 2002. It has proposed equal treatment for different types of cocaine, a 5:1 ratio, and a 20:1 ratio, and also proposed sentencing enhancements for aggravating factors. *See generally,* 2002 Report, 1997 Report, 1995 Report. Congress, however, has completely failed to act on these proposals to more narrowly tailor the sentencing policy to address the actual harms.

The 100:1 powder to crack cocaine sentencing disparity also presents unconstitutional

---

[8] Not necessarily an unique view, the D.C. Circuit Court also claimed that the harsh treatment of crack traffickers helped protect the African American community. *See United States v. Thompson*, 27 F.3d 671, 678 n, 3 (D.C. Cir. 1994).

purposeful discrimination. Congress's rejection of the Commission's 1995 proposal occurred with the knowledge that 85% to 90% of crack defendants were African American. *See* 1995 Report at 156.[9] The Commission has now issued three reports throughly discrediting the purported rationales for the crack/powder disparity. The only Congressional action has been to disapprove the Commission's original proposed amendment, and otherwise to do nothing. Congress has reaffirmed the disparity in the sentencing almost entirely for racial reasons.

While the Supreme Court has made "unceasing efforts to eradicate racial prejudice from our criminal justice system," *Johnson v. California*, 543 U.S. 499, 512 (2005), Congress, unfortunately, in passing the Disapproval Act, has not followed suit with respect to crack cocaine offenses. Because Congress, knowing the disparate racial impact and lack of policy bases to justify the penalty differential, "reaffirmed ... at least in part" the enhanced penalties for crack cocaine because of its adverse impact on African-Americans, *United States v. Johnson*, 40 F.3d, 436, 439 (D.C.Cir. 1994), the existing penalty scheme is invalid on equal protection and due process grounds.

D. The Minimally Sufficient Sentence

The sentencing statute directs the Court to impose a parsimonious sentence which supports the purposes of sentencing: just punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a). Just punishment relates back to the seriousness of the offense, above, but the other issues of deterrence, incapacitation, and rehabilitation, also fail to support the advisory guideline range recommended here.

The purpose of incapacitation serves to punish a defendant as well as protect society from the individual. Neither reason justifies the guideline recommendation in this case.

Unfortunately young black men in America are incarcerated at an alarming rate. These high incarceration rates have been linked to slim economic opportunity and turbulent living conditions. Sociologists trace increased crime and incarceration rates among low education men to decreased economic opportunity for unskilled workers. Becky Pettit & Bruce Western, *Mass Imprisonment*

---

[9] The trend continues; in fiscal year 2006 African Americans accounted for 81% of crack defendants. 2006 United States Sentencing Commission Statistic Sourcebook, Table 34 (attached).

*and The Life Course: Race and Class Inequality in U.S. Incarceration,* American Sociological Review 151-169 (April 2004).

Researchers have begun to look at the American penal system as more than just as a reflection of society. It is a force that has a profound impact on shaping society. "[T]he system takes men with limited education and job skills and stigmatizes them in a way that makes it hard for them to find jobs...The effects of imprisonment ripple out from prisoners, breaking up families and further impoverishing neighborhoods, creating the conditions for more crime down the road." Christopher Shea, *Life Sentence,* The Boston Globe, 9-23-07.

When determining the minimally-sufficient sentence, the Court must determine whether a more severe sentence would achieve greater justice, deterrence, incapacitation, or rehabilitation. In Mr. McLain's situation, under these circumstances, a guideline sentence cannot be justified. Mr. McLain's recommendation of 120 months incarceration more fairly addresses the purposes of sentencing under § 3553(a). It is still an extremely long sentence. It will afford Mr. McLain the opportunity to become a productive member of society.

IV. Conclusion

For all of these reasons, Mr. McLain asks the Court to impose a sentence of 120 months of incarceration.

Respectfully submitted
Daniel McLain
By his attorney,

Mary S. McElroy, 4830
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
mary_mcelroy@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was hand-delivered to Kristin Mattias, United States Probation Officer, and Sandra Beckner, Assistant United States Attorney, on November 29, 2007.